# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-13-00510-CR
_____

**MURPHY JAY BERNARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 252nd District Court**
**Jefferson County, Texas**
**Trial Cause No. 12-15320**

## MEMORANDUM OPINION

A jury found Murphy Jay Bernard[1] ("Bernard") guilty of possession of a controlled substance (cocaine) in the amount of at least one gram or more and less than four grams. *See* Tex. Health & Safety Code Ann. § 481.115(c) (West 2010). Bernard pleaded "true" to two felony conviction enhancements as alleged in the

---

[1]On the judgment from which he appeals, Bernard is identified as "Murphy Jay Bernard AKA Murphy Jay Bernard AKA Jay Bernard[.]"

1

indictment, and the trial court assessed punishment at thirty-five years in prison. In one appellate issue, Bernard argues that the trial court erred in not granting his motion for new trial. Finding no error, we affirm the trial court's judgment.

FACTS

Officer Gerald Bush with the City of Port Arthur Police Department testified that on September 6, 2012, he was on patrol. His vehicle license plate recognition system camera in his patrol car picked up the license number of Bernard's vehicle, and Bush received a notification from the system "that there were warrants associated with that vehicle and that the warrants were on . . . Bernard Murphy." Bush initiated a traffic stop. Bush asked Bernard for his identification and he complied. Bush placed Bernard under arrest for the outstanding warrants and conducted a search incident to arrest (a "pat down") to ensure Bernard did not have any weapons or contraband, and to inventory any items in his possession. Bush did not locate any narcotics on Bernard at that time. Bush transported Bernard to the Jefferson County Correctional Facility and left Bernard in the custody of the officer on duty.

Officer Chris Walker with the Jefferson County Correctional Facility testified that he was working in the book-in area of the facility at the time Bernard was brought in by Officer Bush. Officer Walker explained to the trial court that

2

during the booking procedure the arrested person is patted down, and if they are not released, a more thorough strip search is conducted later wherein the arrested person removes all their clothes. Walker testified that when Bernard was removing his underwear during the strip search, Walker was about three feet away from Bernard. According to Officer Walker, he and Bernard were alone in the strip-search room, and there was no contraband in the strip-search room prior to their entry. During the strip search, Walker saw Bernard "make, like, a pitch gesture[,]" and Walker saw "what looked like a clear bag fly backward and up underneath the bench[.]" Walker waited while Bernard got dressed into the jail uniform and then followed him out. Bernard was placed in a holding cell. Walker then went back in and retrieved the items he saw that were located "[p]artially up underneath the bench." Walker did not tell Bernard he had retrieved the items, and Walker took the items to his book-in supervisor, Lieutenant Mills, and explained what had happened. Walker testified that he believed that Bernard was hiding the items in his genital area, where, according to Walker, individuals are known to attempt to conceal narcotics. Walker explained that the strip-search area where he saw Bernard discard the items is not videotaped because of the nudity involved with strip searches.

Officer Walker later advised Officer Bush as to what Walker had found on Bernard, and upon Bush's return to the jail, Walker handed Bush the two bags he retrieved from the strip-search room. One bag contained a green leafy substance that appeared to be marijuana, and the other bag contained several off-white, rock-like items which appeared to be crack cocaine. The items were later analyzed at the Jefferson County Regional Crime Lab and identified as "marijuana weighing 0.03 ounces with the gross analyzed remainder at 0.24 ounces" and "cocaine weighing 1.56 grams [including any adulterants and dilutants]." The jury found Bernard guilty of possession of a controlled substance and the trial court sentenced Bernard to thirty-five years in prison.

After his conviction, Bernard filed a motion for new trial. In his motion, Bernard alleged that after he had been sentenced and transported back to the jail, Officer Sims, a correctional officer, "approached [Bernard]" and "advised [him] that he had personal knowledge that Mr. Bernard did not possess the controlled substance he was charged and convicted of" and that "no one had ever approached him [Sims] during the investigation prior to Mr. Bernard's trial to interview him [Sims] and [he] only became aware of the circumstances after learning Mr. Bernard was convicted and sentenced to imprisonment." The motion further alleged that Sims "advised Mr. Bernard that if he was subpoenaed he would testify

4

as to the information he knows, but could not come forward, for fear of repercussions from other colleagues." According to the motion, this "newly discovered evidence" would have been material, and had it been presented to the jury, it could have "possibly establish[ed] Mr. Bernard's innocence of these charges." The motion for new trial was verified by Bernard but it did not contain an affidavit or other sworn testimony from Sims.

Officer Sims testified at the hearing on the motion for new trial. Deputy Sims explained that he was working in the book-in area as a desk officer for the Jefferson County Sheriff's Department on the day Bernard was brought in for booking, and that he "grew up" with Bernard. Sims testified that the day Bernard was booked was a "fairly busy day" and he saw Bernard being "hand search[ed]" at the desk, prior to being strip searched. Sims described the "hand search" as a "fairly thorough" search wherein the officer has the person remove jackets, shoes, and belt, and the officer has the person "put their hands on the counter and step back at about a 90-degree angle" so the person is leaning over during the search. The officer pats down the person from their head to their feet. According to Sims, during this "hand search" the officer checks in the person's mouth, hair, and in "the pockets . . . that may be down lower on the leg[,]" as well as around the

5

waistband of their pants. Sims agreed that the hand search is "not up to the same standard" as a strip search.

Sims testified that from his recollection nothing was brought out during Bernard's book-in search that showed he was carrying any type of contraband. Bernard was then placed in a glass holding cell, where he waited several hours before he was escorted to the dress-out room. Sims testified that he had no knowledge of who went with Bernard to the dress-out room or what happened in the dress-out room. Sims also testified that he was not familiar with where the narcotics were discovered because he was not there.

Sims stated that prior to Bernard's trial no one ever questioned Sims about what he knew about the incident. According to Sims, Bernard approached Sims while Bernard was incarcerated and asked Sims if he recalled the day Bernard was booked. Sims told Bernard that he recalled Bernard coming in, being patted down, and spending time in the holding cell, but that he had no knowledge regarding the strip search and where the contraband was found. Sims testified that he became upset when, about a month prior to the hearing, Bernard's "fiancée or girlfriend" left a note in Sims's mailbox asking Sims to contact Bernard's attorney regarding the case. Sims explained that he was upset because he has a fiancée and a nine-

year-old daughter, and he did not want anyone to know where he lived. Sims gave the note to his supervisors, who put the note on file.

Sims testified that based on his experience working in the jail he believed it was unlikely that Bernard would still be carrying contraband after undergoing the hand search and after he was in the holding cell for that amount of time. However, Sims admitted that in his experience, and on several occasions, an individual went through the same process as Bernard and still possessed narcotics up until the point of the strip search. Sims conceded that although he observed the officer hand-search Bernard, it was possible that Bernard could still possess narcotics "in a more intimate area of his body[.]" Sims explained that he had worked alongside Officer Walker at the Jefferson County Correctional Facility for four years, and Sims described Walker as a "straight arrow . . . pretty good guy." Sims stated that if Officer Walker had testified that he saw Bernard discard narcotics from the strip search facility, Sims would have no reason to doubt his testimony. Sims testified that, contrary to Bernard's allegations in his motion for new trial, Sims did not contact Bernard and Sims has no information regarding whether or not Bernard possessed illegal narcotics. When asked whether there was any truth to Bernard's allegation in his motion for new trial that Sims did not come forward with this

alleged information because he feared repercussions from other colleagues, Sims responded, "That's false."

The trial court signed an order denying Bernard's motion for new trial. In denying the motion, the trial court made the following findings:

> (1) the evidence presented at the hearing was known to the defendant before trial in that he personally participated in all events described by Deputy Sims;
> (2) there was no lack of diligence on the defendant's part and he in fact was completely aware of the facts presented at hearing;
> (3) the substance of the testimony of Deputy Sims was presented at trial and thus, the testimony of Deputy Sims would not probably bring about a different result if a new trial was ordered; and
> (4) the substance of the testimony of Deputy Sims was cumulative, and collateral to evidence produced at trial.

In his sole issue on appeal, Bernard maintains that the trial court erred by not granting his motion for new trial. According to Bernard, this Court should grant him a new trial because Deputy Mariyo Sims's testimony constituted newly discovered evidence that would entitle Bernard to a new trial, and that this Court should grant him a new trial "in the interest of justice[.]"

STANDARD OF REVIEW

We review a trial court's ruling on a motion for new trial for an abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). "We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Id.* We

8

may not substitute our judgment for the judgment of the trial court; rather, we are limited to deciding whether the trial court's ruling was arbitrary or unreasonable. *Id.* Therefore, the trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *Id.*

ANALYSIS

Under the Texas Code of Criminal Procedure, "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West 2006). The Texas Court of Criminal Appeals has interpreted this provision to require the satisfaction of the following four-part test: (1) the newly discovered evidence was unknown or unavailable to the movant at the time of his trial; (2) the movant's failure to discover or obtain the evidence was not due to lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and, (4) the new evidence is probably true and will probably bring about a different result on another trial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002).

Bernard states on appeal that "[t]he main issue in this case is whether [he] possessed the controlled substance found in the jail under the bench." Officer

9

Walker testified that when Bernard was removing his underwear during the strip search, Walker was about three feet away from Bernard. The jury heard Walker testify that he saw Bernard "make, like, a pitch gesture[,]" and further that Walker saw "what looked like a clear bag fly backward and up underneath the bench[.]" Walker retrieved items, later identified as bags containing marijuana and cocaine, located "[p]artially up underneath the bench." Walker testified that Bernard had to have been hiding the items in his genital area, where, according to Walker, individuals are known to attempt to conceal narcotics.

At the hearing on the motion for new trial, Officer Sims testified that based on his experience working in the jail he believed it was unlikely that Bernard would still be carrying contraband after undergoing the hand search and after he was in the holding cell for that amount of time. However, Sims then admitted that in his experience, and on several occasions, an individual went through the same process as Bernard and still possessed narcotics up until the point of the strip search. Additionally, Sims testified that he had no reason to doubt Officer Walker's testimony and Sims's testimony was contrary to several of Bernard's allegations in Bernard's motion for new trial. Sims also acknowledged that the hand search was not as thorough as the strip search, and that he had no knowledge of what happened with Bernard during the strip search and in the dress-out room.

10

Sims testified he has no information regarding whether Bernard possessed illegal narcotics.

On the record before us, Bernard has not shown that the alleged "new evidence" is not otherwise cumulative, nor has he shown that the alleged "new evidence" as he describes it is probably true or that the alleged "new evidence" will probably bring about a different result on another trial. *See id.* We find that the trial court's denial of the motion for new trial was neither arbitrary nor unreasonable. Therefore, we conclude that the trial court did not abuse its discretion in denying the motion for new trial. *See Webb*, 232 S.W.3d at 112. Bernard's sole issue is overruled. The trial court's judgment is affirmed.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on November 21, 2014
Opinion Delivered January 21, 2015
Do Not Publish

Before Kreger, Horton, and Johnson, JJ.

11